UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENNETH WILLIAMS,

    Plaintiff,

  v.

SOUTHERN ILLINOIS
RIVERBOAT/CASINO CRUISES, INC.,
d/b/a HARRAH'S METROPOLIS CASINO,
*et al.*,

    Defendants.

Case No. 06-cv-664-JPG

**MEMORANDUM AND ORDER**

    This matter comes before the Court on defendant Anton Eberhart's ("Eberhart") motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 36). Plaintiff Kenneth Williams ("Williams") has responded to the motion (Doc. 39). The Court also considers Williams's motion for an extension of time to file a motion for summary judgment (Doc. 49), to which some defendants have responded (Docs. 51 & 56).

**I.    Standard for Dismissal**

    When reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts as true all allegations in the complaint. *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (*per curiam*) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). To avoid dismissal under Rule 12(b)(6) for failure to state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the Supreme Court held that this requirement is satisfied if the complaint (1) "describe[s] the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests,' *Conley v.*

*Gibson*, 355 U.S. 41, 47 (1957)," *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Bell Atlantic*, 127 S. Ct. at 1964), and (2) "plausibly suggest[s] that the plaintiff has a right to relief, raising that possibility above a 'speculative level.'" *Concentra Health Servs.*, 496 F.3d at 776 (quoting *Bell Atlantic*, 127 S. Ct. at 1965).

In *Bell Atlantic*, the Supreme Court rejected *Conley v. Gibson*'s more expansive interpretation of Rule 8(a)(2) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" *Conley*, 355 U.S. at 45-46. *Bell Atlantic*, 127 S. Ct. at 1968; *Concentra Health Servs.*, 496 F.3d at 777. Now "it is not enough for a complaint to avoid foreclosing possible bases for relief; it must actually suggest that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.'" *Concentra Health Servs.*, 496 F.3d at 777 (quoting *Bell Atlantic*, 127 S. Ct. at 1965).

Nevertheless, *Bell Atlantic* did not do away with the liberal federal notice pleading standard. *Airborne Beepers & Video, Inc. v. AT&T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007); *see, e.g., Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (*per curiam*). A complaint still need not contain detailed factual allegations, *Bell Atlantic*, 127 S. Ct. at 1964, and it remains true that "[a]ny district judge (for that matter, any defendant) tempted to write 'this complaint is deficient because it does not contain . . .' should stop and think: What rule of law *requires* a complaint to contain that allegation?" *Doe v. Smith*, 429 F.3d 706, 708 (7th Cir. 2005) (emphasis in original). Nevertheless, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic*, 127 S. Ct. at 1964. If the factual detail of a complaint is "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8,"

it is subject to dismissal.  *Airborne Beepers*, 499 F.3d at 667.

## II.     Alleged Facts

Taking all allegations as true and drawing all reasonable inferences in Williams's favor, the Amended Complaint establishes the following facts relevant to this motion.

On August 27, 2005, Williams and his wife patronized the casino in Metropolis, Illinois, owned by defendant Southern Illinois Riverboat/Casino Cruises, Inc.  Williams and his wife are black.  While at the casino, Williams attempted to use a complimentary card allowing him access to the Diamond Lounge, a special section of the casino, and other services simply by displaying the card.  Williams and his wife enjoyed their Diamond Lounge privileges during the afternoon of August 27, where they were the only black patrons.

At 7 p.m., Williams missed the bus that was supposed to take him back to his home in Nashville, Tennessee.  Williams found two alternate ways home, but both were to leave early the next morning.  Unable to get a hotel room at the casino for the night, Williams returned to the Diamond Lounge to wait.

A casino employee refused to admit Williams to the Diamond Lounge, asserting that he was not a member, and instead called security.  Williams believes he was not allowed in because of his race because "[t]he only distinguishing feature that might have made [him] look like he was not a member was the color of his skin."  Am. Compl. ¶ 39.  The casino employee and casino security guards called Defendant Eberhart, an agent of the Illinois Gaming Board who was on duty at the casino and supervised all security matters, to tell him about the situation and to "get his approval."

While Williams was waiting calmly outside the Diamond Lounge, five casino security guards surrounded him and prevented him from reentering the Diamond Lounge.  The casino

3

employee continued to assert that Williams was not a Diamond Lounge member despite his complimentary membership card and directed the security guards to remove him from the premises.  Williams calmly and voluntarily left the casino accompanied by the security guards.

Several officers from the Metropolis Police Department met Williams in the casino parking lot.  After speaking with the security guards, one of the officers arrested Williams for criminal trespass to property.  Eberhart was present during the arrest and was listed on the arrest report as a participating officer.

The following day, casino employees filed a Patron Incident Report and a police report, both alleging belligerent and disorderly conduct by Williams the previous night.  The reports led to a disorderly conduct charge against Williams and to a ban on Williams's ever returning to the casino.  After ten months and after review of electronic surveillance tapes showed that statements in the police report were untrue, all charges against Williams were dropped.  As a result of his arrest and prosecution, Williams suffered physical, psychological and pecuniary injuries.

Williams filed the complaint in this case on August 30, 2006, and amended his pleading on February 13, 2007.  The Amended Complaint alleges ten counts against various defendants.  In the pending motion, Eberhart asks the Court to dismiss all official capacity claims against him and Counts I, II, IV, VI, VIII, IX and X in their entirety against him.  Williams has conceded that dismissal of all official capacity claims against Eberhart except the claim for injunctive relief in Count II is proper, as is dismissal of Counts I, VI, VIII, IX and X against Eberhart in their entirety.  The Court will therefore grant the motion to dismiss to the extent it addresses those claims, leaving at issue only the claim for injunctive relief in Count II against Eberhart in his official capacity and Count IV against Eberhart in his individual capacity.  The Court will

address each count in turn.

**III.   Analysis**

    A.    <u>Count II:  Access to Public Accommodation</u>

Count II alleges that Williams was denied equal access to a public accommodation in violation of Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a).  He believes his exclusion from the Diamond Lounge on August 27, 2005, was race discrimination and that his ultimate expulsion from the casino was because he challenged that discriminatory act by casino personnel.  Williams ties Eberhart into his expulsion by alleging that the Patron Incident Report could not have been filed and Williams could not have been banned from the casino without Eberhart's approval.

The Court has carefully reviewed the Amended Complaint and believes that Count II might have been able to withstand a Rule 12(b)(6) motion to dismiss prior to *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), but that it cannot withstand such a motion now.  The Amended Complaint alleges that casino employees informed Eberhart of the situation with Williams and proceeded to expel and arrest Williams with his approval.  These allegations do not foreclose the possibility that Eberhart knew from the casino employees' reports that they were discriminating against Williams because of his race and approved that action, which would satisfy the *Conley v. Gibson* standard and would provide Eberhart with adequate notice of the claim against him.

However, the Amended Complaint fails on the second requirement announced in *Bell Atlantic*:  that the complaint plausibly suggest that Williams is entitled to relief from Eberhart or the Illinois Gaming Board because he or it participated in excluding Williams from the casino because of his race.  To connect Eberhart or the Illinois Gaming Board to race discrimination,

the allegations must plausibly suggest that the report to Eberhart revealed racially discriminatory behavior or motive, as opposed to the simple desire to rid the casino of a patron because he was unruly or for any reason other than his race. Without such a suggestion, there is nothing to tie Eberhart or the Illinois Gaming Board to any improper behavior. However, such an inference is entirely speculative and unsupported by any allegation at all. Nothing in the complaint makes it plausible that Eberhart knew of, approved or participated in any racially discriminatory action to exclude Williams from the casino. For this reason, Count II against Eberhart must be dismissed.

      B.     <u>Count IV: Arrest Without Probable Cause</u>

Counts III and IV allege that Williams was arrested without probable cause in violation of his Fourth Amendment rights. Eberhart asks the Court to dismiss Count IV as duplicative of Count III. Williams responds that Count III focuses on Eberhart's role in making the actual arrest, while Count IV focuses on an alleged collaboration between Eberhart and others in making a false report to establish probable cause.

This disagreement among the parties stems from the plaintiff's confusion between a claim and a legal theory. The claim asserted against Eberhart is that he was personally involved in the deprivation of Williams's Fourth Amendment rights by participating in, condoning or turning a blind eye to his arrest without probable cause. *See Gossmeyer v. McDonald*, 128 F.3d 481, 495 (7th Cir. 1997). That claim is set forth in Count III. Two of the legal theories that can be used to prove this claim are that Eberhart conspired with others to make a false report leading to Williams's arrest without probable cause and that Eberhart participated in the arrest of Williams without probable cause. Williams can pursue both of these legal theories in a single claim – Count III. There is no need for a new claim in Count IV, which is redundant of the claim in Count III. The dismissal of Count IV is not fatal to the claim in Count III, for only

claims, not legal theories, need to be pled in federal court. *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005). For this reason, the Court will grant the motion to dismiss Count IV against Eberhart without prejudice to the final disposition of the claim, by whatever theory Williams wishes to pursue, in Count III.

## IV. Dispositive Motion Deadline

Williams asks the Court to extend the dispositive motion deadline by ten days to November 7, 2007 (Doc. 49). The Court notes that this case is set for trial in January 2008 and that the discovery and the dispositive motion deadlines have already been extended twice, once at all parties' request (Doc. 44) and once at the plaintiff's request, at which time the Court warned the parties that no further extensions would be considered (Doc. 47). Further extension of the dispositive motion deadline at this time would likely require a continuance of the trial to allow the Court to consider the dispositive motion. That is unacceptable.

## V. Summary

For the foregoing reasons, the Court

- **GRANTS** Eberhart's motion to dismiss (Doc. 36),

- **DISMISSES** Counts I, II, VI, VIII, IX and X against Eberhart in his official and individual capacities and Count IV against Eberhart in his official capacity **with prejudice**;

- **DISMISSES** Count IV against Eberhart in his individual capacities **without prejudice**;

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case; and

- **DENIES** Williams's motion to extend the dispositive motion deadline (Doc. 49).

**IT IS SO ORDERED.**
**DATED: November 5, 2007**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**