UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENNETH WILLIAMS,

    Plaintiff,

v.

SOUTHERN ILLINOIS RIVERBOAT/
CASINO CRUISES, INC., d/b/a HARRAH'S
METROPOLIS CASINO, *et al.*,

    Defendants.

Case No. 06-cv-664-JPG

# MEMORANDUM AND ORDER

This matter comes before the Court on the motion for summary judgment filed by defendant Anton Eberhart ("Eberhart"), an agent of the Illinois Gaming Board ("IGB") (Doc. 57). Plaintiff Kenneth Williams ("Williams") has responded to the motion (Doc. 71), and Eberhart has replied to that response (Doc. 76). Eberhart has also filed a supplemental reply (Doc. 81), which Williams has moved to strike or, in the alternative, to be allowed to respond to (Doc. 89). Eberhart has responded to the motion to strike (Doc. 94).

## I. Motion to Strike (Doc. 89)

Eberhart's supplemental response points to *Holmes v. Village of Hoffman Estates*, 511 F.3d 673 (7th Cir. 2007), a case decided after his reply brief was submitted, and briefly explains how that case supports a proposition he had already put forth in earlier briefing. Williams asks the Court to strike it as it results in more than six pages of briefing in reply to his response. In this district, reply briefs may only be five pages long unless the Court gives permission for a longer brief. *See* Local Rule 7.1(d). Williams then attempts to sneak into his motion a response to Eberhart's second reply brief despite this district's flat prohibition on sur-reply briefs. *See* Local Rule 7.1(c).

The Court is well able to consider newly decided relevant cases without further specific briefing from the parties. Thus, it does not need Eberhart's second reply brief to properly decide this case. Accordingly, it will grant Williams's motion to strike (Doc. 89). It will also, however, disregard the substantive argument portions of Williams's motion because they are tantamount to a prohibited sur-reply brief.

## II. Standard for Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases that turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the

parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

**III.    Facts**

Viewing all the evidence and drawing all reasonable inferences in Williams's favor, the Court finds the admissible evidence establishes the following relevant facts.

On August 27, 2005, Williams and his wife patronized the casino in Metropolis, Illinois, owned by defendant Southern Illinois Riverboat/Casino Cruises, Inc. ("Harrah's"). On that day, Eberhart was working in the casino as an IGB agent. In that capacity, he had the authority to make arrests for crimes related to gaming and to assist the Metropolis Police Department ("MPD") in making other arrests.

Around 8:00 p.m. that night, Harrah's security personnel called Eberhart on a radio and asked him to come to the front entrance of the casino. When he arrived outside the front entrance, he spoke briefly with Harrah's security supervisor defendant Jerry Rednour ("Rednour"), who pointed Williams out to him. Williams was in the parking lot, was agitated and was speaking in a loud voice to passers-by. A number of Harrah's security personnel were also present. Rednour informed Eberhart that the casino manager had asked Williams to leave the casino and that, in leaving, Williams had become belligerent and had yelled at other casino patrons and had yelled expletives. Williams has submitted affidavit statements that he had not actually behaved this way, and the Court must take those statements as true for the purposes of this motion.

3

In the parking lot, Williams raised his voice to tell entering casino patrons that he had been kicked out of the casino for no reason at all, but he did not curse or threaten anyone.

Eberhart attempted to approach Williams to speak with him, but Williams was not interested in talking and instead walked away, although he found Eberhart more sympathetic than Harrah's security personnel. Eberhart spoke again with Harrah's security personnel. He then approached Williams a second time and asked him to relate what had happened from his perspective, but Williams remained unwilling to engage in conversation with Eberhart. Eventually, believing that Eberhart genuinely cared about him and was concerned about him, Williams told Eberhart in a very respectful way that Harrah's casino personnel had told him to leave the casino, that he had done nothing wrong inside the casino and that he did not understand why he had been thrown out. Eberhart asked him for his driver's license, and Williams complied.

Eberhart testified that during his conversation with Williams, Williams was yelling and cursing such that some casino patrons appeared alarmed by Williams and kept their distance from him. Williams has given an affidavit statement saying he behaved otherwise. For the purposes of this motion, the Court must accept as true Williams's statement that he was not cursing or yelling. Williams does admit, however, that on occasion, while Williams was talking to Eberhart, Harrah's security guards began to surround and close in around him, so Williams told Eberhart in a loud voice, "Keep them back." Eberhart indicated to the security guards that they should back away from Williams, and they complied.

After observing Williams for about twenty minutes in the parking lot, Eberhart formed the opinion that Williams was not going to leave the property despite Harrah's request. At one point, Williams calmly approached Eberhart and Metropolis Police Officer Michael Hamilton

("Hamilton") to retrieve his driver's license and, sensing he was going to be arrested, put his hands out and said, "If you're going to arrest me, arrest me, but please don't hurt me or throw me to the ground." At that point, Eberhart took hold of Williams's arms and placed them behind his back, and Hamilton applied handcuffs. Williams did not resist, was cooperative and was not abusive in any way. Prior to the arrest, Eberhart and Hamilton had never discussed arresting Williams. When Williams asked why he had been arrested, neither Hamilton nor Eberhart answered.

Eberhart submitted a report on the incident the following day. His report was ultimately given to the office of Patrick Windhorst ("Windhorst"), the Massac County State's Attorney, but Eberhart himself did not charge Williams, testify or otherwise participate in his prosecution. After reviewing the evidence in the case, Windhorst charged Williams with criminal trespass to real property and disorderly conduct. He dismissed the case pursuant to a *nolle prosequi* right before trial because in his estimation the case was not serious enough to expend resources on and other more important cases took precedence. He did not dismiss the charges because he believed Williams was innocent, because he believed there was no probable cause to arrest Williams or because there was some other fatal flaw in his case.

Williams filed the complaint in this case on August 30, 2006, and amended his pleading on February 13, 2007. The Amended Complaint alleges ten counts against various defendants, including a cause of action under 42 U.S.C. § 1983 against Eberhart for arresting him without probable cause (Count III), a state law cause of action for false arrest (Count V) and a state law cause of action for malicious prosecution (Count VII).

In the pending motion, Eberhart asks the Court for summary judgment on all three counts

against him.[1]  He argues that there was probable cause to arrest Williams and that he is entitled to qualified immunity from the § 1983 claim, and sovereign and public official immunity from the state law claims.  He also challenges Williams's ability to prove numerous elements of a malicious prosecution claim.

**IV.    Analysis**

   A.    Count III:  § 1983 Claim

The Court addresses the issue of qualified immunity, which subsumes the inquiry of whether Williams can prove a constitutional violation.  Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000).  It protects an official from suit "when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted."  *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *accord Saucier v. Katz*, 533 U.S. 194, 206 (2001).

A court required to rule upon the qualified immunity issue must first consider whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Wilson v. Layne*, 526 U.S. 603, 609 (1999).  If it

---

[1] Eberhart also asks for summary judgment on Count II, a cause of action under Title II of the Civil Rights Act of 1964, 42 U.S.C. § 2000a(a), and Count IV, a cause of action under 42 U.S.C. § 1983 for violation of the Fourth Amendment.  The Court has already dismissed Count II against Eberhart for failure to state a claim and has dismissed Count IV against Eberhart as duplicative of the claim in Count III (Doc. 61).

is clear that there has been no constitutional violation, there is no need for further inquiry; the officer is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. In the interest of promoting clarity in legal standards, the Court should decide the first question even if the officer is clearly immune. *Wilson*, 526 U.S. at 609; *Denius*, 209 F.3d at 950.

In order to prove a § 1983 claim against an individual, a plaintiff must show that the defendant deprived the plaintiff of rights secured by the Constitution or laws of the United States and that the defendant was acting under color of state law. *Ienco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002); *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 -84 (7th Cir. 2006); *Brokaw v. Mercer Co.*, 235 F.3d 1000, 1009 (7th Cir. 2000). There is no dispute that Eberhart was acting under color of state law, so the critical question is whether a reasonable jury could find that he deprived Williams of a constitutional right, namely, his Fourth Amendment right to be free from unreasonable seizure.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *accord Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). Probable cause is determined by considering the totality of the circumstances:

> [A] law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense. . . . Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. . . . So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists.

*United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000) (internal citations omitted).

"Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152.

A report from a reasonably credible witness identifying a person as the perpetrator of a crime is sufficient to establish probable cause to arrest the person. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) (citing *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998)). Whether the report is, in fact, true is irrelevant to the probable cause inquiry. *Id.* (citing *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998)). While an officer should conduct further investigation if the report he receives would lead a reasonable officer to be suspicious, an officer need not conduct an incredibly detailed investigation at the probable cause stage. *Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 1999).

A reasonable officer in Eberhart's position would have had probable cause to believe Williams had committed or was committing a crime. Even viewed in Williams's favor, the evidence shows that Eberhart received a report from Rednour that Williams had been ordered to leave the casino and had been belligerent thereafter. In combination with Eberhart's observations that Williams was not leaving the casino property, Rednour's report was enough to provide probable cause to believe Williams had committed the offenses of criminal trespass to property[2] and disorderly conduct.[3] The report of a security officer as to the events in his jurisdiction is not the type of report that would lead a reasonable officer to be suspicious such

---

[2]A person commits criminal trespass to property in Illinois if he "remains upon the land of another, after receiving notice from the owner or occupant to depart." 720 ILCS 5/21-3(a)(3).

[3]A person commits disorderly conduct in Illinois if he "knowingly . . . [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1.

8

that he should conduct further investigation. Thus, Eberhart was reasonable in relying on Rednour's report that Williams had been expelled from the casino and had been belligerent in leaving. Eberhart observed himself when he first encountered Williams that, even before he relinquished his driver's license, he was not leaving the parking lot. This would certainly lead a reasonable officer to conclude that Williams was criminally trespassing on the casino's property.

That Williams and Eberhart did not have the same understanding of Harrah's expulsion – Williams thought he had to leave the boat, but Eberhart thought he had to leave the entire Harrah's premises including the parking lot – and that no one clarified this for Williams does not negate probable cause. A reasonable officer in Eberhart's position would have understood an expulsion to apply to the entirety of Harrah's property and would reasonably have thought the presence of Williams anywhere on the property (not in the process of leaving expeditiously) to have been a crime.

Rednour's report was also sufficient to give Eberhart probable cause to believe Williams had been guilty of disorderly conduct. Based on the report, Eberhart believed Williams had yelled and cursed at casino patrons on his way out of the casino itself. Such behavior, by its very nature, was likely to have alarmed or disturbed patrons inside the casino, especially those at whom his vituperative speech was allegedly directed. Thus, Rednour's report also provided probable cause to believe Williams had been criminally disorderly inside the casino, even if he had behaved like an angel in the parking lot.

Even if probable cause existed for only one crime – either criminal trespass to property or disorderly conduct – Eberhart would not have violated Williams's Fourth Amendment rights when he participated in the arrest. Williams appears to believe there must have been probable cause to arrest Williams for *both* criminal trespass to property and disorderly conduct. This is

9

not so.  As long as there is probable cause for an objectively reasonable officer to believe *any* crime has been committed, even if it is not the crime ultimately charged or the crime the arresting officer had in mind at the time of the arrest, the arrest does not violate the Fourth Amendment.  *Devenpeck*, 543 U.S. at 153 (citing *Whren v. United States*, 517 U.S. 806, 812-13 (1996)).

In sum, even viewing the evidence and drawing all reasonable inferences in Williams's favor, a reasonable jury could not find Eberhart lacked probable cause to arrest Williams.  Williams simply cannot succeed in proving a constitutional violation.  The Court need not consider, then, whether the constitutional rights at issue were clearly established on August 27, 2005.  Eberhart is entitled to qualified immunity, and summary judgment, on Count III.

B.   Count V:  State Law False Arrest Claim

Like Williams's § 1983 claim, his state law false arrest claim turns on whether Eberhart had probable cause to arrest him.  "The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff."  *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990).

As noted above, Eberhart had reasonable grounds to believe Williams had committed or was committing an offense.  For these reasons, the Court will grant summary judgment in Eberhart's favor on Count V and need not consider whether Eberhart is immune from such a claim.

C.   Count VII:  Malicious Prosecution

To succeed on a claim for malicious prosecution, a plaintiff must prove "(1) the commencement or continuation of an original criminal or civil proceeding by defendants, (2)

10

termination of the proceeding in favor of plaintiff, (3) the absence of probable cause for the proceeding, (4) the presence of malice on defendants' part, and (5) damages resulting to plaintiff." *Boyd v. City of Chicago*, 880 N.E.2d 1033, 1045 (Ill. App. Ct. 2007) (citing *Reynolds v. Menard, Inc.*, 850 N.E.2d 831, 837 (Ill. App. Ct. 2006)).

Because the Court has already determined Eberhart had probable cause to arrest Williams, the only part of Williams's prosecution in which Eberhart participated, it need not address whether Williams can prove the other elements of a malicious prosecution claim or whether Eberhart is immune from such a claim.[4] The claim against him for malicious prosecution must fail. The Court will accordingly grant summary judgment for Eberhart on Count VII.

## V. Conclusion

For the foregoing reasons, the Court:

- **GRANTS** Williams's motion to strike (Doc. 89);

- **STRIKES** Eberhart's supplemental reply brief (Doc. 81);

- **GRANTS** Eberhart's motion for summary judgment (Doc. 57); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case. Eberhart is terminated from this action.

**IT IS SO ORDERED.**
**DATED: April 14, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**

---

[4] As an alternative basis for this ruling, the Court adopts the reasoning it used to dismiss Williams's malicious prosecution claim against Hamilton, which is set forth in another order entered today. That order found that the criminal proceedings against Williams were not terminated in his favor.