UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KENNETH WILLIAMS,

    Plaintiff,

v.

SOUTHERN ILLINOIS RIVERBOAT/
CASINO CRUISES, INC., d/b/a HARRAH'S
METROPOLIS CASINO, *et al.*,

    Defendants.

Case No. 06-cv-664-JPG

**MEMORANDUM AND ORDER**

This matter comes before the Court on the motion for summary judgment filed by defendants Michael Hamilton ("Hamilton") and Don Helm ("Helm"), both officers in the Metropolis, Illinois, Police Department (collectively, "the MPD defendants") (Doc. 52). Plaintiff Kenneth Williams ("Williams") has responded to the motion (Doc. 72), and the MPD defendants have replied to that response (Doc. 78).

**I.    Standard for Summary Judgment**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The reviewing court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Spath*, 211 F.3d at 396. This standard is applied with special scrutiny in cases that turn on issues of intent and credibility. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Where the

moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas*, 209 F.3d at 692. Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

## II.    Facts

Viewing all the evidence and drawing all reasonable inferences in Williams's favor, the Court finds the admissible evidence establishes the following relevant facts.

On August 27, 2005, Williams and his wife patronized the casino in Metropolis, Illinois, owned by defendant Southern Illinois Riverboat/Casino Cruises, Inc. ("Harrah's").

That night, the MPD defendants received a call reporting a disorderly patron causing problems at the casino. Hamilton was the primary officer responding to the call, and Helm, who arrived separately, served as his back-up. When they arrived at the casino, Illinois Gaming Board Agent Anton Eberhart ("Eberhart"), Harrah's Security Supervisor Jerry Rednour and a number of other Harrah's security personnel were in the casino parking lot with Williams.

Hamilton testified that Eberhart told him then that Williams had been disruptive in the casino and had been asked to leave. Eberhart, however, denied he had that conversation with Hamilton. For the purposes of this summary judgment motion, the Court must assume that Eberhart did not tell Hamilton Williams had been disruptive and had been asked to leave the casino. Hamilton denied that any other person told him about the events concerning Williams that had allegedly occurred in the casino prior to Hamilton's arrival. As for Helm, one of Harrah's security guards told him that Williams had been disruptive inside the casino and had been asked to leave.

The MPD defendants were present when Eberhart began talking to Williams. Eberhart, Hamilton and Helm testified that Williams cursed and was irate and disruptive during this conversation, but Williams has signed an affidavit stating otherwise. The video surveillance recording is not helpful. It shows Williams making animated gestures which a reasonable jury could find to indicate disruptive behavior or simply peaceful but animated talking. Without a sound track, a reasonable jury could find either way. For the purposes of this motion, the Court must view the video in Williams's favor and accept as true Williams's statement that he was not cursing or being disrespectful to Eberhart or anyone else. Williams does admit, however, that on occasion, while Williams was talking to Eberhart, Harrah's security guards began to surround and close in around him, so Williams told Eberhart in a loud voice, "Keep them back." Eberhart indicated to the security guards that they should back away from Williams, and they complied. Williams talked to Eberhart for 15 to 25 minutes.

Eberhart then gave Hamilton Williams's driver's license, which he had obtained during his conversation with Williams. Hamilton then asked Williams if there was anyone he could call to give Williams a ride home, and Williams answered politely, "No." Hamilton asked Williams

3

to come toward him to retrieve his license, and as Williams calmly approached, he sensed he was going to be arrested, so he put his hands out and said, "If you're going to arrest me, arrest me, but please don't hurt me or throw me to the ground." At that point, Eberhart took hold of Williams's arms and put them behind his back, and Hamilton applied handcuffs. Hamilton walked Williams to the squad car, and Helm forced Williams to get in the car when he did not readily do so himself. Eberhart and Hamilton had never discussed arresting Williams.

When Williams first asked Eberhart and Hamilton why he was being arrested, they did not answer. He asked Hamilton again on the way to the county detention center, and Hamilton told him he was being arrested for criminal trespass to property.[1] Hamilton told jail personnel Williams had been arrested for criminal trespass to property and disorderly conduct.[2]

Later that night, Hamilton received a complaint from defendant Cecil, a Harrah's security guard, reporting that Williams had been agitated, belligerent and verbally abusive to casino staff inside the casino earlier in the evening as well as outside in the parking lot.

Patrick Windhorst ("Windhorst"), the Massac County State's Attorney, reviewed the evidence in the case, charged Williams with criminal trespass to real property and disorderly conduct and attempted plea negotiations. He dismissed the case pursuant to a *nolle prosequi* right before trial because in his estimation the case was not serious enough to expend resources on and other more important cases took precedence. He did not dismiss the charges because he

---

[1] A person commits criminal trespass to property in Illinois if he "remains upon the land of another, after receiving notice from the owner or occupant to depart." 720 ILCS 5/21-3(a)(3).

[2] A person commits disorderly conduct in Illinois if he "knowingly . . . [d]oes any act in such unreasonable manner as to alarm or disturb another and to provoke a breach of the peace." 720 ILCS 5/26-1.

4

believed Williams was innocent, because he believed there was no probable cause to arrest Williams or because there was some other fatal flaw in his case.

Williams filed the complaint in this case on August 30, 2006, and amended his pleading on February 13, 2007. The Amended Complaint alleges ten counts against various defendants, including a cause of action under 42 U.S.C. § 1983 against the MPD defendants for arresting him without probable cause (Count III), a state law cause of action for false arrest (Count V) and a state law cause of action for malicious prosecution (Count VII). In the pending motion, the MPD defendants ask the Court for summary judgment on all three counts against them. They argue that they had probable cause to arrest Williams, that they are entitled to qualified immunity, that the criminal prosecution against Williams was not terminated in his favor because of his innocence, that there is no evidence of malice and, with respect to Helm only, that he was not personally involved in any improper conduct.

## III.  Analysis

### A.  Count III: § 1983 Claim

#### 1.  Hamilton

The Court addresses the issue of qualified immunity, which subsumes the inquiry of whether Williams can prove a constitutional violation. Qualified immunity is an affirmative defense that shields government officials from liability for civil damages where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000). It protects an official from suit "when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004); *accord Saucier*

5

*v. Katz*, 533 U.S. 194, 206 (2001).

A court required to rule upon the qualified immunity issue must first consider whether the facts, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see Brosseau v. Haugen*, 543 U.S. 194, 197 (2004); *Wilson v. Layne*, 526 U.S. 603, 609 (1999). If it is clear that there has been no constitutional violation, there is no need for further inquiry; the officer is entitled to qualified immunity. *Saucier*, 533 U.S. at 201. In the interest of promoting clarity in legal standards, the Court should decide the first question even if the officer is clearly immune. *Wilson*, 526 U.S. at 609; *Denius*, 209 F.3d at 950.

If the evidence demonstrates that there may have been a constitutional violation, then the court should determine whether the right allegedly violated was clearly established at the relevant time. *Saucier*, 533 at 202. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id*. at 201; *see McNair v. Coffey*, 279 F.3d 463, 465 (7th Cir. 2002). "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." *Saucier*, 533 U.S. at 202. The plaintiff bears the burden of demonstrating that a constitutional right is clearly established. *Denius*, 209 F.3d at 950.

      a.      <u>Constitutional Violation</u>

In order to prove a § 1983 claim against an individual, a plaintiff must show that the defendant deprived the plaintiff of rights secured by the Constitution or laws of the United States and that the defendant was acting under color of state law. *Ienco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002); *see Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *McKinney v. Duplain*, 463 F.3d 679, 683 -84 (7th Cir. 2006); *Brokaw v. Mercer Co.*, 235 F.3d 1000, 1009

(7th Cir. 2000). There is no dispute that the MPD defendants were acting under color of state law, so the critical question is whether a reasonable jury could find that they deprived Williams of a constitutional right, namely, his Fourth Amendment right to be free from unreasonable seizure.

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004); *accord Woods v. City of Chicago*, 234 F.3d 979, 987 (7th Cir. 2000). Probable cause is determined by considering the totality of the circumstances:

> [A] law enforcement officer has probable cause to make an arrest when the facts and circumstances within the officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a prudent person in believing the suspect has committed or is committing an offense. . . . Probable cause, however, does not require evidence sufficient to support a conviction, nor even evidence demonstrating that it is more likely than not that the suspect committed a crime. . . . So long as the totality of the circumstances, viewed in a common sense manner, reveals a probability or substantial chance of criminal activity on the suspect's part, probable cause exists.

*United States v. Sawyer*, 224 F.3d 675, 678-79 (7th Cir. 2000) (internal citations omitted). "Whether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck*, 543 U.S. at 152.

A report from a reasonably credible witness identifying a person as the perpetrator of a crime is sufficient to establish probable cause to arrest the person. *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007) (citing *Jenkins v. Keating*, 147 F.3d 577, 585 (7th Cir. 1998)). Whether the report is, in fact, true is irrelevant to the probable cause inquiry. *Id.* (citing *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998)). While an officer should conduct further investigation if the report he receives would lead a reasonable officer to be suspicious, an officer

need not conduct an incredibly detailed investigation at the probable cause stage. *Spiegel v. Cortese*, 196 F.3d 717, 724-25 (7th Cir. 1999).

A reasonable officer in Hamilton's position would not have had probable cause to believe Williams had committed or was committing a crime. Viewed in Williams's favor, the evidence reveals that Hamilton responded to a call from the casino that a patron was being disorderly. The call did not give him notice that the disorderliness rose to the level that it would have been considered a crime or that the casino had asked the patron to leave the premises. When Hamilton arrived on the scene, no one informed him about any prior events of the evening, and Williams behaved in an orderly fashion while in Hamilton's presence in the casino parking lot. In sum, a reasonable officer in Hamilton's place would have had no reasonably trustworthy information from which he could have drawn the conclusion that Williams had been criminally disruptive or that casino personnel had asked him to leave the property. Without this information, there would be no reason for a reasonable officer to believe Williams had committed or was committing a crime, and there was no probable cause to arrest him.[3]

Hamilton urges the Court to impute Eberhart's knowledge to him under the "collective knowledge" doctrine. Under that doctrine, "[w]hen law enforcement officers are in communication regarding a suspect, . . . the knowledge of one officer can be imputed to the other officers. . . ." *United States v. Lenoir*, 318 F.3d 725, 728 (7th Cir. 2003). However, where there is no communication between officers, knowledge cannot be imputed. *See United States v. Ellis*,

---

[3]Williams injects a red herring into this analysis by discussing whether he was detained in a *Terry* stop by Eberhart. *See Terry v. Ohio*, 392 U.S. 1 (1968). Whether Williams was free to leave during his conversation with Eberhart is irrelevant to whether a reasonable officer in Hamilton's position would have believed Williams had committed a crime by not readily leaving the casino premises when allegedly asked, which was well before his conversation with Eberhart, or by being disorderly in the parking lot.

499 F.3d 686, 690 (7th Cir. 2007). Here, Eberhart denied that he was in communication with Hamilton about the relevant matters, so the collective knowledge doctrine cannot apply.

Had Hamilton been told by Harrah's security personnel or Eberhart that Williams had been disorderly and had been asked to leave the premises and had he observed Williams not making any real efforts to do so, Hamilton would have had probable cause to arrest Williams for criminal trespass to property or disorderly conduct. Contrary to Williams's assertions, Hamilton would have had no duty to inquire further as to the casino's specific request for him to leave. A reasonable officer in Hamilton's position could have relied on Harrah's security personnel or Eberhart to report Harrah's request, even if those reports ended up not being true.[4]

Similarly, had Hamilton actually observed Williams being disruptive in the parking lot, he would have had probable cause to arrest him for disorderly conduct. However, since Williams behaved in an orderly fashion while Hamilton observed him, Hamilton had no reason to believe he had committed the offense of disorderly conduct.

      b.      <u>Clearly Established Law</u>

Because the evidence demonstrates that Hamilton may have violated Williams's Fourth Amendment rights, the Court must determine whether the right allegedly violated was clearly established on August 27, 2005. The Court finds that it was; a reasonable officer in Hamilton's position in 2005 should have known that his conduct violated Williams's Fourth Amendment rights. While Williams has not cited any case directly on point, an individual's right not to be arrested where the arresting officer has no evidence of a crime, either from a witness's report or

---

[4]The Court more fully explains the reasoning behind this conclusion in its order granting summary judgment for Eberhart, which is entered contemporaneously with this order.

from personal observation, is too well-established to require a case with an analogous factual situation. Qualified immunity does not apply *only* if "the very action in question has previously been held unlawful"; it can apply, as in this case, where "in the light of pre-existing law the unlawfulness [is] apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citations omitted). Thus, Hamilton is not entitled to qualified immunity and must proceed to trial on Count III.

    2.    <u>Helm</u>

There is no evidence from which a reasonable jury could find Helm was personally involved in any deprivation of Williams's constitutional rights. "To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *accord Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006).

Williams's response does not address Helm's argument that he was not personally involved in Williams's arrest. The Court construes the failure to respond to this portion of the MPD defendants' motion as an admission of the merits of that part of the motion. *See* Local Rule 7.1(c). Indeed, Williams was perhaps wise in not wasting his breath making an argument where the evidence shows Hamilton or Eberhart, not Helm, arrested Williams and that Helm performed the ministerial duty of placing Williams in the squad car after he had been arrested. Such a minimal connection cannot serve as the basis for Helm's liability for an arrest without probable cause.

Furthermore, even if Helm had participated in the arrest, he would have had probable cause to do so. A reasonable officer in his position would have been reasonable in relying on the reports of Harrah's personnel that Williams had been disruptive inside the casino and had been

10

asked to leave the premises. There was nothing in those reports to cause a reasonable officer to believe he needed to investigate further. In combination with Helm's own observations that Williams was not leaving, those reports provided probable cause.

For these reasons, Helm is entitled to qualified immunity, and the Court will accordingly grant summary judgment in his favor on Count III.

B. Count V: State Law False Arrest Claim

Like Williams's § 1983 claim against the MPD defendants, his state law false arrest claim turns on whether the respective defendants had probable cause to arrest him. "The essential elements of a cause of action for false arrest or false imprisonment are that the plaintiff was restrained or arrested by the defendant, and that the defendant acted without having reasonable grounds to believe that an offense was committed by the plaintiff." *Meerbrey v. Marshall Field & Co.*, 564 N.E.2d 1222, 1231 (Ill. 1990).

As noted above, Hamilton may not have had reasonable grounds to believe Williams had committed or was committing an offense. Whether he did must be left to a jury to decide. Helm, on the other hand, did not arrest Williams and, even if he had, he would have had probable cause to do so. For these reasons, the Court will grant summary judgment on Count V for Helm but not for Hamilton.

C. Count VII: Malicious Prosecution

To succeed on a claim for malicious prosecution, a plaintiff must prove "(1) the commencement or continuation of an original criminal or civil proceeding by defendants, (2) termination of the proceeding in favor of plaintiff, (3) the absence of probable cause for the proceeding, (4) the presence of malice on defendants' part, and (5) damages resulting to plaintiff." *Boyd v. City of Chicago*, 880 N.E.2d 1033, 1045 (Ill. App. Ct. 2007) (citing *Reynolds*

11

*v. Menard, Inc.*, 850 N.E.2d 831, 837 (Ill. App. Ct. 2006)).

Because the Court has already determined Helm had probable cause to play his part in the arrest of Williams, the claim against him for malicious prosecution must fail. The claim against Hamilton, however, is a different story. Because a reasonable jury could find Hamilton lacked probable cause, the Court must now consider whether Williams would be able to prove the other elements of a malicious prosecution claim. Hamilton argues Williams is unable to prove the second and fourth elements – termination of the criminal proceedings in Williams's favor and malice on the part of Hamilton.

As for the second element, "a malicious prosecution action cannot be predicated on underlying criminal proceedings which were terminated in a manner not indicative of the innocence of the accused." *Swick v. Liautaud*, 662 N.E.2d 1238, 1242 (Ill. 1996). Illinois has adopted the rule that abandonment of criminal proceedings is not indicative of the innocence of the accused if it was the result of the impracticability of bringing the accused to trial. *Id.* at 1243 (citing *Restatement (Second) of Torts* §§ 660, 661 (1977)). The plaintiff bears the burden of establishing that the facts and circumstances surrounding the decision to terminate the proceeding lead to the inference that there was no reasonable ground to pursue the prosecution. *Swick*, 662 N.E.2d at 1243.

In this case, there is no evidence from which Williams could demonstrate his criminal prosecution was terminated in his favor in a manner indicative of his innocence. When he made the decision to dismiss the criminal case against Williams, Windhorst had in front of him witness statements in the arrest and patron incident reports, which provided reasonable grounds to pursue the prosecution, and the casino's video surveillance tape, which could have been construed to support the case against Williams. Windhorst believed he could convict Williams, rightly or

12

wrongly, based on this evidence. Windhorst's deposition testimony indicates he made the decision to dismiss the case not because he believed Williams was innocent or because he could not succeed in prosecuting Williams but instead purely to ensure the State's Attorney was able to try more important cases.

In his response to the motion, Williams does not address the evidence he could use to show his criminal prosecution was terminated in a manner indicative of his innocence. Again, the Court construes Williams's failure to respond to the argument as an admission of its merits. *See* Local Rule 7.2(c). In any case, Williams certainly has not carried his burden of presenting evidence to support the conclusion that his criminal prosecution was terminated in his favor.

Because there is no evidence from which a reasonable jury could find Williams's prosecution was terminated in a manner indicative of his innocence, Hamilton is entitled to summary judgment on Count VII. The Court need not examine whether Williams would be able to establish the fourth element – malice.

## IV. Conclusion

For the foregoing reasons, the Court

- **GRANTS in part** and **DENIES in part** the MPD defendants' motion for summary judgment (Doc. 52). Summary judgment is granted in favor of defendant Helm in Counts III, V and VII and in favor of defendant Hamilton in Count VII. Helm is terminated from this action. Summary judgment is denied to Hamilton as to Counts III and V, which shall be tried to a jury; and

- **DIRECTS** the Clerk of Court to enter judgment accordingly at the close of the case.

**IT IS SO ORDERED.**
**DATED: April 14, 2008**

                                                    s/ J. Phil Gilbert
                                                    **J. PHIL GILBERT**
                                                    **DISTRICT JUDGE**